UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHAKEIM JOHNSON,

            Plaintiffs,

   v.

ROBERT OWENS, Lieutenant at Great Meadow
Correctional Facility; ADAM EDERLEY,
Correctional Officer at Great Meadow Correctional
Facility; CHRISTOPHER MILLER,
Superintendent at Great Meadow Correctional
Facility; ANTHONY J. ANNUCCI, Acting
Superintendent, JOHN DOES 1-4, Correctional
Officers at Great Meadow Correctional Facility.

            Defendants.

**Case No.: 9:20-CV-0982(LEK/CFH)**

**PLAINTIFF'S SECOND AMENDED
COMPLAINT PURSUANT TO 42 U.S.C
§1983**

1. Cruel and Unusual Punishment
2. Intentional Infliction of Emotional Distress
3. Denial of First Amendment Rights
4. Denial of Due Process

**JURY TRIAL DEMANDED**

LAW OFFICE OF
DANIEL R. SMALLS, PLLC
Daniel R. Smalls, Esq.
Bar No. 5410089
251 State Street
Schenectady, New York 12305

**Attorney for Plaintiff**

NOW COMES plaintiff, SHAKEIM JOHNSON, by and through his attorney, DANIEL R. SMALLS, ESQ., complaining of defendants, ROBERT OWENS, Lieutenant at Great Meadow Correctional Facility; ADAM EDERLEY, Correctional Officer at Great Meadow Correctional Facility; CHRISTOPHER MILLER, Superintendent at Great Meadow Correctional Facility; ANTHONY J. ANNUCCI, Acting Superintendent, and JOHN DOES 1-5 alleging as follows:

## BACKGROUND AND JURISDICTION

1.    This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343.

2.    Defendant's Owens, Ederley and John Does 1-5 subjected plaintiff to severe unconstitutional conditions of confinement when they placed plaintiff in an observation room and did not allow him to eat or drink water for five days and then did not let him bathe before and after meals when they did start feeding him.  When these defendants were unsuccessful in finding any contraband, they planted it in the observation room after the plaintiff was moved to another room and while he was not present.  Defendants Owens and Ederley then conspired to issue false misbehavior reports and further unlawfully confine plaintiff.

3.    Defendants Miller and Annucci were both made aware of the above violations but failed to remedy them and actually participated in the violations when they unlawfully affirmed the wrongful determination of the prison disciplinary hearing.

4.    The plaintiff at all times relevant hereto was an inmate at Great Meadow Correctional Facility.

1

5.    At all times relevant hereto, defendants Robert Owens, Adam Ederley and John Does 1-5 were duly appointed correction officers of the Great Meadow Correctional Facility, acting under color of the statutes, ordinances, regulations, policies, customs and usages of the New York State Department of Correctional and Community Supervision (DOCCS), and defendants Christopher Miller (Miller) and Anthony J. Annucci (Annucci).

6.    At all times relevant hereto, defendants Miller and Annucci were responsible for the promulgation of policies and procedures of correction officers acting under color of statutes, ordinances, regulations, policies, customs and usages of the DOCCS.

## FACTS

7.    During the commission of the actions of the defendants, Plaintiff was incarcerated at Great Meadow Correctional Facility.

8.    On or about January 18, 2019 at approximately 1:50pm correction officials allegedly observed inmate Madonado, who is unrelated to the instant action, obtain a plastic wrapped bundle from an unknow inmate while in the "Big Yard" of Great Meadow C.F.

9.    Eight months later on August 25, 2019, at about 8:00pm plaintiff was in the "Big Yard" using the telephone. Three Correction Officers approached plaintiff, ordered him to hang up the phone and to place his hands behind his back. The three Correction Officers escorted plaintiff to an area within the facility where defendant Owens awaited.

10.    Defendant Owens then ordered plaintiff to take off his clothes. While plaintiff was being subjected to this strip search, defendant Owens informed plaintiff that his prison cell was being searched at the same time.

11.    At the conclusion of the strip search and cell search no contraband was found.

12.     Defendant Owens then ordered the Correction Officers to take plaintiff to a contraband observation room.

13.     This observation room contained nothing but a bed frame and mattress and was cooled by forced air. Plaintiff was not allowed to have any clothes on except for a paper gown.

14.     There were also Correction Officer who were assigned to watch plaintiff 24 hours a day.

15.     Defendant Owen ordered that plaintiff be deprived of food and water. After five days of being totally deprived of life's necessities, plaintiff loss consciousness and was taken to an outside hospital emergency room. Plaintiff suffered from extreme dehydration and nutrient deprivation.

16.     Plaintiff was brought back from the hospital to the deprivation room and, despite being starved Defendant Owen still deprived plaintiff of food or water until the next day.

17.     Plaintiff was and is currently a devote Rastafarian which follow the Christian dietary laws. Under these laws washing one's hands is required before and after consuming food.

18.     Plaintiff was not allowed to wash himself in any manner prior to or after eating and there was fecal matter smeared on the walls of the observation room.

19.     Plaintiff was forced to wait until a sergeant made a round before he could use the bathroom. Plaintiff used the bathroom approximately 8 times during his duration in the observation room and was not allowed to wash his hands or bathe. Every time plaintiff used the bathroom, the observation room was searched for contraband and nothing was found.

20.     On or about September 3, 2019, correction officials moved Plaintiff to another observation room and placed another inmate in the previous room. Plaintiff was then subjected to

3

X-rays to determine if he had any contraband inside of him.  It was determined after X-Rays that plaintiff did not have any contraband inside of him.

21.    However, on September 5, 2019, plaintiff was placed in Special Housing Unit and thereafter issued misbehavior reports by defendants Owns and Ederley.

22.    According to defendant Ederley's misbehavior report, contraband was uncovered in the first observation room after the room was searched and plaintiff moved to a different room.

23.    According to defendant Owens's misbehavior report, defendant Owens was able to determine that plaintiff was the unknown inmate who participated in a drug exchange 8 months earlier.

24.    Despite the stark lack of evidence, a superintendent's designee found plaintiff guilty of violating facility rules stemming from the issuance of the two misbehavior reports.

25.    Plaintiff duly filed a grievance to directly to the Defendant Annucci complaining that his grievances were being discarded at the facility level and that the defendants conspired to issue false misbehavior reports.

26.    Concomitantly, plaintiff appealed his disciplinary decisions to defendant Annucci. Despite being aware of the actions of the defendants, defendant Annucci denied plaintiff's appeal.

27.    As a direct and proximate result of the acts of the defendants, the plaintiff suffered the following injuries and damages:

> a. Violation of his constitutional rights under the First, Eighth and Fourteenth
>    amendments to the United Constitution to freely practice religion, to be free from
>    Cruel and Unusual punishment and to receive Due Process of Law.

4

b. The actions of the defendants violated the clearly established and well settled Federal constitutional rights of plaintiff, including freedom of religion and the freedom of not being subjected to Cruel and Unusual Punishment.

## COUNT ONE

**42 U.S.C. §1983**
**Cruel and Unusual Punishment**
**(Defendants Miller, Owen, Ederley and John Does 1-5)**

28. Plaintiff realleges and incorporates by reference herein all preceding paragraphs of plaintiff's complaint.

29. It is axiomatic that food and drinking water are necessities of life.

30. Defendant's Owen, Ederley and John Does 1-5 all deprived plaintiff of food and drinking water from August 25, 2019 to August 30, 2019.

31. The defendants have a constitutional duty to take reasonable measures to guarantee the safety of inmates at all times.

32. The defendants were deliberately indifferent to plaintiff's health and safety when they refused to feed plaintiff or give him water to drink.

33. Defendant Owens, Ederley and all John Does knew of and disregarded an excessive risk to plaintiff's health and safety when then deprived him of food and water until his needed medical attention.

34. The heretofore mentioned defendants inflicted a punishment that was greatly disproportionate to plaintiff's alleged concealment of contraband.

35. As a direct result of the heretofore mentioned defendants' actions, plaintiff suffered psychological and emotional trauma.

## COUNT TWO

**42 U.S.C. §1983**
**Intentional Infliction of Emotional Distress**
**(Defendants Miller. Owens, Ederley and John Does 1-5)**

36.     Plaintiff realleges and incorporates by reference herein all preceding paragraphs of plaintiff's complaint.

37.     Defendants placed plaintiff in a cold observation room with nothing but a paper gown on. He was left in this room with no running water and under barbaric and uncivilized conditions without food or water for an excessive period of time. Plaintiff was forced to use the bathroom and not allowed to wash his hands.

38.     This treatment lasted for approximately two weeks.

39.     Defendants Miller, Owens, Ederley and John Does 1-5 acted in a manner that was extreme and outrageous.

40.     The acts of defendants were the direct cause of the distress that was placed upon plaintiff.

41.     As a direct result of the intentional and unlawful acts of the heretofore mentioned defendants, plaintiff suffered severe emotional distress.

**COUNT THREE**
**42 U.S.C. §1983**
**Denial of First Amendment Rights**
**(Defendants Miller. Owens, Ederley and John Does 1-5)**

42.     Plaintiff re-alleges and incorporates by reference herein all preceding paragraphs in plaintiff's complaint.

43.    At all times relevant to this action, plaintiff has been and currently is a devout Rastafarian.

44.    The Rastafarian dietary laws require the washing of hands both before and after eating.

45.    On August 31, 2019, after 5 days with no food and water, plaintiff was allowed to eat.  However, the heretofore mentioned defendants deprived plaintiff of his religious rights to properly bathe before and after his meals.

46.    There was no rational relationship between depriving plaintiff to properly exercise his religion and any legitimate government interests.

47.    Plaintiff did not have an alternate mean to exercise his religious rights.

48.    As a result of defendants' actions, plaintiff was forced to commit the forbidden act of eating his meals without bathing.

49.    As a direct result of the intentional and unlawful acts of the heretofore mentioned defendants, plaintiffs suffered severe emotional distress.

**COUNT FOUR**
**42 U.S.C. §1983**
**Denial of Due Process**
**(Defendants Miller. Owens, Ederley and John Does 1-5)**

50.    Plaintiff re-alleges and incorporates by reference herein all preceding paragraphs in plaintiff's complaint.

51.    The heretofore mentioned defendants conspired to issue false misbehavior reports in order to justify placing plaintiff in observation rooms, under uncivilized and barbaric conditions.

52.     And unrelated inmate was observed receiving contraband from an unknown inmate. According to the body of the misbehavior report that defendant Owens issued to plaintiff, on January 18, 2019, an unknown inmate gave another inmate a package that was later determined to be synthetic marijuana.

53.     It was not until August 25, 2019, that heretofore mentioned defendants decided to place plaintiff in an observation room.  There was absolutely no evidence that plaintiff was involved in the prison drug transaction, they searched his cell and did not find any contraband, they searched his persons, a rather intrusive search, and did not find any contraband.  They subjected plaintiff to two weeks of strenuous, uncivilized, and barbaric conditions and did not uncover contraband.

54.     It was not until plaintiff was moved to another observation room when correction officials allegedly uncovered contraband. Every time the plaintiff used the bathroom,  his room was searched by correction officials and no contraband was found.

55.     In fact, it was not until plaintiff agreed to an x-ray, which showed that the plaintiff did not have any contraband inside his body, when defendants decided to go a different route and plant contraband in the previous observation room that plaintiff was no longer in.

56.     Defendant Ederley issued a false misbehaver report alleging that he found contraband in the observation room. Defendant was not present during the search.

57.     Coincidentally defendant Owens was able to miraculously identify the unknown inmate in a drug transaction eight months earlier as the plaintiff and issued a false misbehavior report. The plaintiff was then transferred to the special housing unit where he awaited punishment for the falsified misbehavior reports that were issued by defendants Owen and Ederley.

8

58.    Despite a stark lack of evidence, plaintiff was found guilty on his misbehavior reports.

59.    Plaintiff appealed his determination to defendants Miller and Annucci.

60.    Despite the stark lack of evidence, defendants Miller and Annucci affirmed the erroneous decision of the prison disciplinary hearing.

61.    Defendants Miller and Annucci were aware of the issuance of the false misbehavior reports and were grossly negligent in managing subordinates and failed to act on information indicating that the violations were occurring.

## DEMAND FOR PUNITIVE DAMAGES

62.    The actions of the Defendants described herein were extreme and outrageous and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish them for them cruel and uncivilized conduct.

## DEMAND FOR TRIAL BY JURY

63.    The Plaintiffs hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that this Honorable Court grant him the following relief:

A.  A judgment in favor of Plaintiffs against all Defendants for compensatory damages in an amount to be determined by a properly charged jury;

B. A judgment in favor of Plaintiffs against all Defendants for punitive damages in an amount to be determined by a properly charged jury;

C. A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief that this Court finds to be just, proper and equitable.

Dated: May 10, 2021

Respectfully Submitted By:
/s Daniel R. Smalls

Daniel R. Smalls, Esquire
SMALLS LAW
251 State Street, Suite 202
Schenectady, New York 12305
Telephone: 518.878.8048
Facsimile:  518.243.8305
E Mail: Dsmalls@smallslaw.net
**ATTORNEY FOR PLAINTIFF**