UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHAKEIM JOHNSON,

                Plaintiff,

  -against-                              9:20-CV-0982 (LEK/CFH)

ROBERT OWENS, et al.,

                Defendant.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Shakeim Jonson ("Plaintiff") commenced this action on August 24, 2020, alleging claims stemming from an incident that occurred while Plaintiff was incarcerated at Great Meadow Correctional Facility. See Dkt. No. 1 ("Complaint"). After initially ordering administrative closure due to Plaintiff's failure to comply with the filing fee requirement, Dkt. No. 2, the Court granted Plaintiff's motion to proceed in forma pauperis and reviewed his Complaint as required under 28 U.S.C. §§ 1915(e) and 1915A, Dkt. No. 6. The Court dismissed several of Plaintiff's claims but allowed others to proceed. Id. Plaintiff subsequently requested to file an amended complaint as a matter of right. Dkt. No. 18. However, after retaining Counsel, Plaintiff withdrew his request and the parties stipulated to Plaintiff filing a second amended complaint. Dkt. No. 26. Plaintiff's second amended complaint was filed on April 10, 2021. Dkt. No. 29 ("Second Amended Complaint").

Now before the Court are two motions filed by Defendants. The first was filed by Correctional Officer Adam Ederley and Lieutenant Robert Owens. Dkt. Nos. 31 ("Ederley & Owens Motion"), 31-1 ("Ederley & Owens Memorandum of Law"), 31-3 ("Ederley & Owens

Statement of Material Facts"). The second was filed by Acting Commissioner Anthony Annucci and Superintendent Christopher Miller. Dkt. Nos. 44 ("Annucci & Miller Motion"), 44-1 ("Annucci & Miller Memorandum of Law"), 44-2 ("Annucci & Miller Statement of Material Facts"). Each motion was filed in lieu of an answer, seeking summary judgement for failure to exhaust administrative remedies, or, in the alternative, dismissal of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See generally Ederley & Owens Mem. of L.; Annucci & Miller Mem. of L. Plaintiff has filed a response, Dkt. Nos. 45 ("Response"), 45-5 ("Response Memorandum of Law"),[1] 45-2 pages 1–3 ("Plaintiff's Response to Defendants' Statement of Material Facts"), 45-2 pages 3–4 ("Plaintiff's Statement of Material Facts"), and Ederley and Owens have filed a reply, Dkt. No. 46 ("Reply").

For the reasons that follow, Defendants' motions for summary judgement are denied, Annucci and Miller's motion to dismiss is granted, and Ederley and Owens' motion to dismiss is granted with regard to Plaintiff's claims for due process violations and intentional infliction of emotional distress, but is otherwise denied.

## II. BACKGROUND

### A. Facts Relating to Plaintiff's Claims

Because Defendants seeks dismissal of Plaintiff's claims under Rule 12(b)(6), the Court assumes all factual allegations contained in the Complaint are true as they relate to Plaintiff's claims. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

---

[1] While it is somewhat ambiguous which motion(s) Plaintiff is responding to, he explicitly argues that certain claims should not be dismissed against any of the four defendants. See Resp. at 6. As such, the Court will interpret Plaintiff's filing as a response to both of Defendants' motions.

On August 25, 2020, at about 8:00 PM, Plaintiff—then an inmate at Great Meadow Correctional Facility—was using the telephone in the facility's "Big Yard." Sec. Am. Compl. ¶ 9. Three corrections officers ordered him to hang up the phone and escorted him to another area of the facility where Owens awaited. Id. Plaintiff was strip searched and his cell was also searched but no contraband was found. Id. ¶¶ 10–11. Defendant Owens then ordered the corrections officers to place Plaintiff in a contraband observation room. Id. ¶ 12. Once in the observation room, Plaintiff was not allowed to wear anything except for a paper gown and was watched by corrections officers 24 hours a day. Id. ¶¶ 13–14.

Defendant Owens ordered that Plaintiff be deprived of food and water. Id. ¶ 15. After five days of such deprivation, Plaintiff, suffering from extreme dehydration and nutrient deprivation, lost consciousness and was taken to a hospital emergency room. Id. When Plaintiff was returned to Great Meadow, he was again placed in the observation room and was not provided with food or water until the following day. Id. ¶ 16.

When Plaintiff finally received food, he was not allowed to wash his hands prior to eating, despite the fact that there was fecal matter smeared on the walls of the room. Id. ¶ 18. Plaintiff is a devout Rastafarian and follows Christian dietary laws that require the washing of one's hand prior to consuming food. Id. ¶ 17. Plaintiff was only allowed to use the bathroom approximately 8 times during his detention in the observation room and was never allowed to wash his hands. Id. ¶ 19.

On or about September 3, 2019, Plaintiff was moved to a different observation room and was subjected to X-rays, which showed that there was no contraband inside of him. Id. ¶ 20. However, on September 5, 2019, Plaintiff was issued misbehavior reports by Owens and Ederley. Id. ¶ 21. Ederley's report claimed that contraband was discovered in the observation

room after Plaintiff had been moved to a different room. Id. ¶ 22. Owens' report claimed that Owens was now able to identify Plaintiff as having been involved in a drug exchange 8 months earlier. Id. ¶ 23. Despite a lack of evidence, a superintendent's designee found Plaintiff guilty of violating facility rules based on the two reports. Id. ¶ 24.

### B. Facts Relating to Procedural Exhaustion

Because Defendants seek summary judgement based on failure to exhaust administrative remedies, the Court here considers facts that are undisputed except where otherwise noted.

On October 1, 2019, Plaintiff was transferred to Five Points correctional facility via Downstate Correctional Facility, arriving at Five Points on October 3, 2019. Def.s' SMF ¶ 9; Pl.'s Resp. to Def.s' SMF ¶ 9. Plaintiff remained at Five Points until December 24, 2019, when he was transferred to Attica Correctional Facility. Def.s' SMF ¶ 9; Pl.'s Resp. to Def.s' SMF ¶ 9.

Plaintiff attended an orientation program at Great Meadow that included instructions on how to use the inmate grievance process from February 5, 2018, to February 11, 2018. Def.s' SMF ¶ 11; Pl.'s Resp. to Def.s' SMF ¶ 11. However, Plaintiff contends that he was told that he was not required to file a grievance for "any complaint where the facility could not provide a [sic] relief." Dkt. No. 45-3 ¶ 6; see also Pl.'s SMF ¶ 3. Defendants contend that "during all relevant times, Great Meadow, Downstate, and Five Points had fully functioning inmate grievance processes available to incarcerated individuals," Def.s' SMF ¶ 10, and that Plaintiff never filed any grievance related to the claims at issue in this case at Great Meadow, Downstate, or Five Points, nor filed any extension request or appeal related to those claims, Id. ¶¶ 12–22. However, Plaintiff disputes these assertions, stating that on September 9, 2019, while still at Great Meadow, he "handwrote two identical letters to the Inmate Grievance Unit and complained about being deprived of food, water and other essentials." Pl.'s SMF ¶ 3. Plaintiff further attests

4

that he placed that grievance "in an envelope addressed to the Inmate Grievance Unit and placed it on his cell gate, per facility policy, for the correction officer to take and place in the mailbox." Id. ¶ 4. Plaintiff states that he repeated this process on September 20, 2019, and that he also submitted grievances while at Downstate Correctional Facility. Id. ¶¶ 5–6. Finally, Plaintiff contends that he wrote a letter to the Commissioner of Corrections complaining that he never received a response to the grievances he filed at Great Meadow.[2] Id. ¶ 4.

## III. LEGAL STANDARD

### A. Summary Judgement

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

---

[2] Plaintiff refers to "Comstock Correctional Facility." However, based on Dkt. No. 45-3 at 8, it is clear that Plaintiff intends to refer to Great Meadow Correctional Facility, which is located in Comstock, New York.

317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

"'Although a motion for summary judgment may be filed at any time until 30 days after the close of all discovery, Fed. R. Civ. P. 56(b), summary judgment is generally not appropriate until after some discovery has occurred.' . . . '[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.'" James v. Mosko, No. 13-CV-5, 2016 WL 8671478, at *4 (W.D.N.Y. July 22, 2016), report and recommendation adopted, 2017 WL 397474 (W.D.N.Y. Jan. 30, 2017) (quoting Houston v. Sheahan, No. 13-CV-6594, 2016 WL 554849, at *1 (W.D.N.Y. Feb. 10, 2016), and then quoting Hellstrom v. U.S. Dep't of Veterans Affs., 201 F.3d 94, 97 (2d Cir. 2000)).

### B. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

## IV. DISCUSSION

### A. Summary Judgement

#### 1. *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") requires that incarcerated individuals exhaust available administrative remedies before bringing a court action challenging prison conditions under federal law. See 42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."). Defendants explain the established inmate grievance programs that exist at the facilities in which Plaintiff was incarcerated and argue that Plaintiff failed to utilize those procedures. See Ederley & Owens Mem. of L. at 5–9; Annucci & Miller Mem. of L. at 8–10. In particular, Defendants note that

incarcerated individuals confined in a New York State Department of Corrections and Community Supervision ("DOCCS") facility must properly exhaust three levels of review including (1) filing a grievance with the Inmate Grievance Program clerk at his or her correctional facility, (2) appealing any unfavorable ruling to the facility superintendent, and (3) appealing any adverse superintendent decision to the Central Office Review Committee. Ederley & Owens Mem. of L. at 5–7.

Plaintiff responds that while he may not have completed each step of the three-step review process, he exhausted the grievance process to the extent it was available. See Resp. Mem. of L. at 3–4. He alleges that he attempted multiple times to file grievances, but that they were apparently never delivered. Pl's SMF ¶¶ 3–7. He further seeks to present evidence that his grievances were systematically destroyed. See Resp. Mem. of L. at 4; Dkt. No 45-4.

Because Plaintiff has not yet had an opportunity to conduct discovery to support his exhaustion theory, the Court finds Defendants' request for summary judgment premature. "[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery," Hellstrom, 201 F.3d at 97, and this is not the rarest of cases, see Young-Flynn v. Wright, No. 05-CV-1488, 2007 WL 241332, at *13 (S.D.N.Y. Jan. 26, 2007) (finding summary judgement premature even where the "Court ha[d] some doubt that Plaintiff's only described efforts toward exhaustion could ultimately be found sufficient to overcome the exhaustion requirement" because discovery had not yet been conducted); James, 2016 WL 8671478, at *4 (finding defendants' summary judgment motion premature for lack of discovery); Blackhawk v. Hughes, No. 920-CV-0241, 2021 WL 862257, at *4 (N.D.N.Y. Jan. 19, 2021) (denying motion for summary judgement and noting that while exhaustion of administrative remedies is a question of law, and hence appropriate for

consideration on a motion for summary judgement in lieu of an answer, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery") (quoting Hellstrom, 201 F.3d at 97), report and recommendation adopted, 2021 WL 752838 (N.D.N.Y. Feb. 26, 2021) (Kahn, J.).

### B. Motion to Dismiss

#### 1. *Intentional Infliction of Emotional Distress*

In order to state a claim for intentional infliction of emotional distress ("IIED") a Plaintiff must allege four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir.1996). Defendants raise several arguments in support of their motion to dismiss Plaintiff's claim for IIED. First, Defendants argue that "[i]t is well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity." Ederley & Owens Mem. of L. at 10; Annucci & Miller Mem. of L. at 16–17. However, as Plaintiff points out in his Response, this argument is irrelevant because Plaintiff has brought his claim against government employees and not a government entity. Resp. Mem. of L. at 6.

Next, Defendants argue that the claim is untimely because the Second Amended Complaint was filed after the one-year statute of limitations for intentional torts had expired. Ederley & Owens Mem. of L. at 11; Annucci & Miller Mem. of L. at 17. This argument too is unavailing because the Second Amended Complaint relates back to the original complaint, which was filed within the statutory window. "For an amended complaint to 'relate back' to an original complaint under Rule 15(c)(1)(C), it must meet four criteria: (i) any new claim 'must have arisen out of conduct set out in the original pleading'; (ii) any newly named defendant 'must have

9

received such notice that it will not be prejudiced in maintaining its defense'; (iii) any newly named defendant must have known that 'but for a mistake of identity, the original action would have been brought against [him]'; and (iv) 'the second and third criteria [must be] fulfilled within [the period provided by Rule 4(m) for serving the summons and complaint], and . . . the original complaint [must have been] filed within the limitations period.'" Liverpool v. Davis, 442 F. Supp. 3d 714, 725 (S.D.N.Y. 2020) (quoting Barrow v. Wethersfield Police Dept., 66 F.3d 466, 468–69 (2d Cir. 1995). Here, only the first criterion is relevant—as the same four defendants were named in the original complaint—and there is no question that the IIED claim arises from the same conduct set out in the original pleading, namely Plaintiff's deprivation of food and water for five days. See generally Compl; Sec. Am. Compl. As such, the Second Amended Complaint relates back to the original complaint and the IIED claim is not untimely.

Finally, Defendants contend that Plaintiff's claim should be dismissed on the merits because "Plaintiff failed to meet the extremely high threshold established under New York law for maintenance of an intentional infliction of emotional distress claim . . . [and] fail[ed] to articulate Defendants' intent to cause severe emotional distress." Ederley & Owens Mem. of L. at 11; Annucci & Miller Mem. of L. at 18. While depriving Plaintiff of food and water for five days may well qualify as extreme and outrageous conduct under New York Law, Defendants are correct that Plaintiff has failed to allege Defendants acted with intent to cause severe emotional distress. See generally Sec Am. Compl. Because courts require this element of an IIED claim to be explicitly articulated, Plaintiff's claim must be dismissed.[3] See, e.g., Ortiz v. Lasker, 590 F.

---

[3] The Court notes that, while Defendants failed to raise the issue, even if Plaintiff had alleged intent or had attempted to state a claim for negligent infliction of emotional distress rather than IIED, his claim would be barred by New York Correction Law § 24. New York Correction Law § 24 deprives both state and federal courts of jurisdiction over state law claims

Supp. 2d 423, 425–26 (W.D.N.Y. 2008) (declining to enter default judgement on IIED claim based on forcible rape because Plaintiff failed to allege intent to cause severe emotional distress).

### 2. *Free Exercise*

"To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials does not further some legitimate penological objective." Burroughs v. Mitchell, 325 F. Supp. 3d 249, 279 (N.D.N.Y. 2018). "A prisoner 'must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" Id. (quoting Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006)). "A religious belief is 'sincerely held' when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature." Id. "A prisoner's sincerely held religious belief is 'substantially burdened' where 'the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Id. at 280 (quoting Jolly v. Coughlin, 76 F.3d 468, 476–77 (2d Cir.1996)).

Here Plaintiff alleges that he is Rastafarian, that his religion requires him to wash his hands before and after eating, and that he was prevented from doing so from the time he returned from the hospital until the time he was removed from the observation room on September 3, 2019. See Sec. Am. Compl. ¶¶ 17–19. Defendants argue that Plaintiff's Second Amended Complaint "lacks allegations specifying the nature of Plaintiff's religious beliefs and thus fails to plausibly suggest that those beliefs were 'sincerely held' or 'substantially burdened.'" Ederley & Owens Mem. of L. at 12; Annucci & Miller Mem. of L. at 19. They further contend that

---

for money damages against DOCCS employees arising from conduct within the scope of their employment. See, e.g., Flint v. Jun, 541 F. Supp. 3d 284, 287 (W.D.N.Y. 2021).

11

"Plaintiff has not pled facts related to how many times he was prevented from washing his hands or facts suggesting that the interference was anything other than de minimis." Ederley & Owens Mem. of L. at 12; Annucci & Miller Mem. of L. at 19. Finally, Ederley and Owens point to Sassi v. Dutchess Cnty., No. 16-CV-1450, 2017 WL 4773320 (N.D.N.Y. Oct. 20, 2017), a case in which the plaintiff was denied access to a Bible for a week, to argue that "Plaintiff was not forced to alter or abandon his religious affiliation or practice at any time." Ederley & Owens Mem. of L. at 12.

Defendants' arguments fail to address Plaintiff's actual allegations. Plaintiff has clearly articulated the nature of his belief: "Plaintiff was and is currently a devote [sic] Rastafarian which follow the Christian dietary laws. Under these laws washing one's hands is required before and after consuming food." Sec. Am. Compl. ¶ 17. This is sufficient to plausibly suggest that Plaintiff's beliefs are sincerely held and religious in nature. While Defendants are correct that Plaintiff has not specified the precise number of times he was prevented from washing his hands, he has alleged that he was not allowed to wash his hands during the several day period between his return from the hospital and his removal from the observation room. See id. ¶¶ 9, 15–20. Contrary to Defendants' assertions, Plaintiff has alleged that he was forced to alter or abandon his religious practice. Specifically, he has alleged that, after being denied food for five days, he was provided with food but denied the opportunity to wash his hands. See id. ¶¶ 15–20. At this stage, the Court is unable to assess either the sincerity of Plaintiff's belief or the belief's importance within Plaintiff's belief system. Nonetheless, Plaintiff has pled sufficient facts to render plausible his free exercise claim and Defendants' motions to dismiss must be denied. See Lloyd v. City of New York, 43 F. Supp. 3d 254, 264 (S.D.N.Y. 2014) ("I cannot say on a motion to dismiss for failure to state a claim that the inability of a Muslim to . . . engage in ritual

12

ablution prior to prayer[] does not rise to the level of a substantial burden on the free exercise of religion."); cf. Tafari v. Annets, No. 06-CV-11360, 2008 WL 2413995, at *15–17 (S.D.N.Y. June 12, 2008) (finding that occasional denials of kosher bag lunches during transport were a *de minimis* and not a substantial interference with free exercise of religion and collecting similar cases), report and recommendation adopted, 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008), aff'd sub nom. Tafari v. Annetts, 363 F. App'x 80 (2d Cir. 2010).

       3.  *Due Process*

Plaintiff seeks to raise a due process claim based on false misbehavior reports and prison disciplinary decisions allegedly made without sufficient evidence. See Sec. Am. Compl. at 7–9. "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process." Sital v. Burgio, 592 F. Supp. 2d 355, 357 (W.D.N.Y. 2009). "Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, a plaintiff must be able to show either: (1) that he was disciplined without adequate due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." Id.

Here, Plaintiff does not contend that he faced retaliation for exercising a constitutionally protected right. See generally Sec. Am. Compl. To the extent Plaintiff contends that he was disciplined without adequate due process, he must demonstrate that he possessed a liberty interest, of which he was deprived. See Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004). However, Plaintiff has failed to allege such a liberty interest. "A protected liberty interest is only established if the deprivation imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Edwards v. Mejia, No. 11-CV-9134, 2013 WL 1092978, at *2 (S.D.N.Y. Mar. 15, 2013). Here, Plaintiff has failed to allege that he faced any punishment

at all, noting only that he was "transferred to the special housing unit where he awaited punishment." Sec. Am. Compl. at 57. A short stay in the special housing unit ("SHU"), without more, does not implicate a liberty interest. See Ortiz, 380 F.3d at 654 (noting that under "normal" SHU conditions, a 101-day confinement in SHU does not implicate a liberty interest); Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998) (("[D]iscipline in SHU does not automatically present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.") (internal quotation marks omitted)). As such, Plaintiff's due process claim must be dismissed.

    4. *Personal Involvement*

In addition to their arguments for dismissing Plaintiff's claims as against all defendants, Annucci and Miller argue that they were not personally involved in Plaintiff's constitutional deprivations as required under 42 U.S.C. § 1983. See Annucci & Miller Mem. of L. at 11–15. Here the Court considers Annucci and Miller's argument with regard to Plaintiffs two surviving claims—Cruel and Unusual Punishment and denial of Free Exercise—both of which stem from Plaintiff's treatment during his detention in the observation room.

Plaintiff's only allegations against Annucci and Miller with regard to the alleged constitutional violations that occurred during his time in the observation room are that they "were responsible for the promulgation of policies and procedures of correction officers" and that they "were both made aware of the above violations but failed to remedy them and actually participated in the violations when they unlawfully affirmed the wrongful determination of the prison disciplinary hearing." Sec. Am. Compl. ¶¶ 3, 5. The first of these statements merely demonstrates that Annucci and Miller played a supervisory role and is far from sufficient to demonstrate personal involvement. See Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020)

("[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting Iqbal, 556 U.S. at 676 (2009)).

While the second allegation comes closer to alleging personal involvement, it too falls short. The allegation does not state when, how, or to what extent Annucci and Miller were made aware of the violations. See Sec. Am. Compl. ¶ 3. Instead, Plaintiff states that Annucci and Miller were personally involved because they "unlawfully affirmed the wrongful determination of the prison disciplinary hearing," id., suggesting that they became aware of the allegedly unconstitutional conduct only after it had already occurred. While a prison official may be found to have violated the Eighth Amendment where that official knew of and disregarded an excessive risk to inmate health or safety, see Vega v. Semple, 963 F.3d 259, 273 (2d Cir. 2020), simply stating that an official was, at some point, made aware of violations, without more, is not sufficient to plausibly allege personal involvement. See, e.g., Gawlik v. Semple, No. 20-CV-564, 2021 WL 4430601, at *13 (D. Conn. Sept. 27, 2021) ("Gawlik alleges only that those defendants were made aware of the confiscation of his religious items after the fact and failed to take action. . . . [T]hose allegations are insufficient—in the aftermath of Tangreti—to support a claim for money damages against supervisory officials."). As such, Plaintiff's claims against Annucci and Miller are dismissed. However, the dismissal is without prejudice and does not preclude a motion to amend if discovery reveals Annucci or Miller's personal involvement. See Young Am.'s Found. v. Stenger, No. 320-CV-0822, 2021 WL 3738005, at *9 (N.D.N.Y. Aug. 24, 2021) (Kahn, J.).

C. **Defendants' Opportunity to Answer**

Defendants request that the Court stay "their time to answer the Second Amended Complaint until 14 days after a final determination is issued with respect to this motion in the event that the action survives." Ederley & Owens Mem. of L. at 1; Annucci & Miller Mem. of L. at 2. Plaintiff opposes this request. Resp. ¶ 4. In general, filing a motion under Fed. R. Civ. P. 12 has the effect of delaying the responsive pleading deadline until 14 days after the Court's determination but filing a motion under Fed. R. Civ. P. 56 does not have the same effect. See Cousin v. Dodrill, No. 08-CV-0848, 2010 WL 986411, at *3 n.2 (N.D.N.Y. Feb. 25, 2010), report and recommendation adopted, 2010 WL 986405 (N.D.N.Y. Mar. 17, 2010) (Kahn, J.); see also Fed. R. Civ. P. 12(a)(4)(A); Fed. R. Civ. P. 56. Given that Plaintiff's motion was filed under both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56, the court doubts whether Defendants' request is necessary. Regardless, the Court finds it appropriate to allow Defendants to answer and grants their request. See Cousin, 2010 WL 986411, at *3 n.2; Rodriguez v. Reppert, No. 14-CV-671, 2016 WL 11483439, at *4 (W.D.N.Y. Sept. 28, 2016) ("[D]espite Rodriguez's request to the contrary . . . the Court will stay defendants' time to answer the complaint until the District Judge renders a decision on the instant motion."), report and recommendation adopted, 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016).

### D. Evidentiary Hearing

Finally, given that summary judgement has been denied, Defendants request "a limited opportunity to depose plaintiff on the issue of exhaustion followed by an evidentiary hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011)." Ederley & Owens Mem. of L. at 10. Plaintiff does not respond to this request. In Messa, the Second Circuit held that factual disputes regarding exhaustion under the PLRA need not be decided by a jury, and may properly be decided by the Court following an evidentiary hearing. Messa, 652 F.3d at 310. This Court has

16

endorsed such an approach on several occasions. See, e.g., McLean v. LaClair, No. 919-CV-1227, 2021 WL 671650, at *9 (N.D.N.Y. Feb. 22, 2021) (Kahn, J.) ("In order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present."); Hudson v. Kirkey, No. 920-CV-0581, 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) (Kahn, J.). However, in each of those cases, as in Messa, discovery had already been completed. As such, here the Court finds it appropriate to allow limited discovery on the issue of exhaustion followed by an evidentiary hearing. See Bailey v. Fortier, No. 09-CV-742, 2013 WL 310306, at *1 (N.D.N.Y. Jan. 25, 2013) ("Bailey was granted limited discovery on the issue of exhaustion, which culminated in an evidentiary hearing.").

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' motions for summary judgment (Dkt. Nos. 31, 44) are **DENIED**; and it is further

**ORDERED**, that Annucci and Miller's Motion to Dismiss under 12(b)(6) (Dkt. Nos. 44) is **GRANTED** and all claims against Annucci and Miller are **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court shall **TERMINATE** from the docket Defendants Annucci and Miller; and it is further

**ORDERED**, that Ederley & Owens' Motions to Dismiss under 12(b)(6) (Dkt. Nos. 31) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Plaintiff's claims for due process violations and intentional infliction of emotional distress are **DISMISSED without prejudice**; and it is further

**ORDERED**, that the case be referred to the Magistrate Judge for limited discovery on the question of administrative exhaustion and an evidentiary hearing; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    March 30, 2021
          Albany, New York

LAWRENCE E. KAHN
United States District Judge