**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SHAKEIM JOHNSON,

                                         Plaintiff,                    9:20-cv-0982
                                                                       (AMN/CFH)
v.

ROBERT OWENS, ADAM EBERLEY,
JOHN DOES # 1-5,

                                         Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

**LAW OFFICE OF DANIEL R. SMALLS, PLLC**            **DANIEL R. SMALLS, ESQ.**
251 State Street
Ste 202
Schenectady, New York 12305
Attorneys for Plaintiff

**ATTORNEY GENERAL FOR THE**                        **OLIVIA R. COX, ESQ.**
**STATE OF NEW YORK**                               Assistant Attorney General
The Capitol
Albany, NY 12224-0341
Attorneys for Defendant

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

On August 24, 2020, Plaintiff Shakeim Johnson ("Plaintiff"), an inmate in the custody of

the New York State Department of Corrections and Community Supervision ("DOCCS"),

commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising

from his incarceration at Great Meadow Correctional Facility ("Great Meadow").[1]  Dkt. No. 1

---

[1] Plaintiff initially commenced this action *pro se* but subsequently retained counsel.  *See* Dkt. No.
22.

("Complaint").[2]

Following review pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, the following claims survived: (1) Plaintiff's Eighth Amendment conditions of confinement claims[3] against Lieutenant Robert Owens ("Owens") and corrections officer Adam Eberley ("Eberley")[4]; and (2) Fourteenth Amendment due process claims against Owens and Eberley. *See* Dkt. No. 6. On May 10, 2021, Plaintiff filed a Second Amended Complaint ("SAC"), naming Owens, Eberley, Christopher Miller ("Miller"), Anthony J. Annucci ("Annucci"), and John Does #1-5[5] ("John Does") as defendants.[6] *See* Dkt. No. 29. In the SAC, Plaintiff asserts four claims: denial of First Amendment rights; Eighth Amendment deliberate indifference; denial of Fourteenth Amendment due process; and intentional infliction of emotional distress.[7] *Id.* Plaintiff seeks compensatory and punitive damages. *See id. ad damnum.* Plaintiff's Fourteenth Amendment and intentional infliction of emotional distress claims were dismissed by Decision and Order dated March 30, 2022. Dkt. No. 47. Owens and Eberley (together, "Defendants") now move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on several grounds, including on

---

[2] Citations to Court documents utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

[3] The Court notes that this claim is also referred to as an Eighth Amendment deliberate indifference claim. *See*, *e.g.,* Dkt. Nos. 29, 56. For purposes of resolving this Motion, the Court understands these claims to be synonymous.

[4] Defendant Eberley is at times incorrectly referred to as Ederley in several documents filed on the docket.

[5] The Court notes that there is a discrepancy in the number of John Doe defendants referenced by Plaintiff. In the caption of the SAC, Plaintiff names "John Does 1-4," however, Plaintiff refers to "John Does 1-5" throughout the SAC. Dkt. No. 29.

[6] Claims against Annucci and Miller were dismissed. *See* Dkt. No. 47.

[7] Plaintiff's contention that his intentional infliction of emotional distress claim is pursuant to Section 1983 is wrong. *See* Dkt. No. 29 at 7. Intentional infliction of emotional distress is a state law tort. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).

the ground that Plaintiff failed to exhaust his administrative remedies.  Dkt. No. 56 ("Motion").

The parties filed responsive briefing.  Dkt. Nos. 61, 63.  On July 7, 2023, the Court issued an Order

to Show Cause ("OTSC") for Plaintiff to demonstrate why the claims against the John Does are

not time-barred.  Dkt. No. 64.  Plaintiff did not respond to the Court's order.  *See generally* Docket.

For the reasons set forth below, the Court denies Defendants' motion for summary

judgment on the ground that Plaintiff failed to exhaust his administrative remedies, grants

Defendants' motion for summary judgment on other grounds, and *sua sponte* dismisses the claims

against the John Does because such claims are time-barred.

## II.    BACKGROUND

### A.  Factual Background

Plaintiff's claims in this action stem from his placement on contraband watch while

incarcerated at Great Meadow.  *See* Dkt. No. 29.  Plaintiff's contraband watch lasted from August

25, 2019, to September 6, 2019.  *See* Dkt. No. 56-2 at ¶¶ 27, 58.   On August 25, 2019, Plaintiff

was placed on contraband watch after he was observed by security swallowing "what was believed

to be a sheathed blade."  *Id.* at ¶ 27.  Plaintiff's contraband watch was authorized by Captain C.

Fraser, Officer of the Day.  *Id.* at ¶ 28.   While on contraband watch, Plaintiff was continuously

watched in 15-minute increments by multiple corrections officers.  *Id.* at ¶ 31.  Plaintiff alleges

that Defendants and John Does were deliberately indifferent to his health and safety, in violation

of the Eighth Amendment, when they deprived him of food and water while on contraband watch

from August 25, 2019 to August 30, 2019.  *See* Dkt. No. 29 at ¶ 30.  On August 29, 2019, Plaintiff

was taken to Glens Falls Emergency Room and was diagnosed with dehydration.  Dkt. No. 56-2

at ¶¶ 43-44.  Defendants dispute that Plaintiff was denied drinking water and food and aver that

Plaintiff (i) refused drinking water, food, and medication, and (ii) did in fact eat meals and drink

water.  *Id.* at ¶¶ 33-39.

Plaintiff also alleges that while on contraband watch from August 31, 2019 to September 6, 2019, Defendants and John Does violated his First Amendment rights when they failed to provide him with water to properly "bathe before and after his meals," which deprived Plaintiff of his right to exercise his Rastafarian religion.  Dkt. No. 29 at ¶¶ 43-48; Dkt. No. 56-2 at ¶ 19.  Plaintiff alleges that he is a devout Rastafarian.  Dkt. No. 29 at ¶ 43.  Prior to being discharged from contraband watch, on September 5, 2019, Plaintiff provided a stool sample that tested positive for synthetic cannabinoid and contained a white plastic ceramic blade inserted in a pen cap.  Dkt. No. 56-2 at ¶¶ 47-52.  Defendant Eberley, who was assigned to observed Plaintiff on September 5, 2019, was responsible for the testing of the stool sample and authored a misbehavior report, charging Plaintiff with contraband, weapon smuggling, and drug possession.  *Id.* at ¶ 53.  Plaintiff requested and was provided with drinking water at 3:50 pm on September 5, 2019.  *Id.* at ¶ 56.  On September 5, 2019, at 4:00 p.m., Plaintiff received and ate a tray of food.  *Id.* at ¶ 57.

Plaintiff was subsequently placed in the Special Housing Unit ("SHU"), where he remained until he was transferred from Great Meadow to Five Points Correctional Facility ("Five Points") via Down State Correctional Facility ("Down State").  *See* Dkt. No. 29 at ¶ 21; Dkt. No. 47 at 4-5.  Plaintiff arrived at Five Points on October 3, 2019.  *See* Dkt. No. 31-3 at ¶ 9.  Plaintiff remained at Five Points until December 24, 2019, when he was transferred to Attica Correctional Facility.  *Id.*  When he first arrived at Great Meadow in February 2018, Plaintiff attended an orientation program that included instructions on how to use the inmate grievance process.  *See* Dkt. No. 31-3 at ¶ 11.  However, Plaintiff contends that he was told that he was not required to file a grievance for "any complaint where the facility could not provide a [sic] relief."  Dkt. No. 45-3 at ¶ 6; *see also* Dkt. No. 45-2 at ¶ 3.  Defendants contend that "during all relevant times, Great Meadow,

4

Downstate, and Five Points had fully functioning inmate grievance processes available to incarcerated individuals," Dkt. No 31-3 at ¶ 10, and that Plaintiff never filed any grievance related to the claims at issue in this case at Great Meadow, Downstate, or Five Points, nor filed any extension request or appeal related to those claims, *id.* at ¶¶ 12-22.

Plaintiff disputes these assertions, stating that on September 9, 2019, while housed in the SHU at Great Meadow, he "handwrote two identical letters to the Inmate Grievance Unit and complained about being deprived of food, water and other essentials." Dkt. No. 45-3 at ¶ 8. Plaintiff further attests that he placed one copy of that grievance "in an envelope addressed to the Inmate Grievance Unit and placed it on his cell gate, per facility policy, for the correction officer to take and place in the mailbox." *Id.* Plaintiff states that he repeated this process on September 20, 2019, and that he also submitted grievances while at Downstate. *Id.* at ¶¶ 9-10. Plaintiff also asserts that he wrote a letter to the Superintendent of Great Meadow. *Id.* at ¶ 12. Finally, Plaintiff contends that he wrote a letter to the Commissioner of Corrections complaining that he never received a response to the grievances he filed at Great Meadow.[8]  *Id.* There is no dispute that Plaintiff never appealed the September 9 and 20, 2019 grievances.

### B.    Procedural Background

In the original Complaint, Plaintiff identified the following individuals as defendants: Owens, Eberley, Superintendent Miller, and Commissioner Annucci. Dkt. No. 1. By Decision and Order filed on December 23, 2020, the Court reviewed the sufficiency of the Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and dismissed the following claims,

---

[8] There is some discrepancy in the record as to the number of letters that Plaintiff authored. Plaintiff testified that he submitted a letter to a Superintendent, *see* Dkt. No. 56-3 at 73:2-5, two letters to two different Commissioners, *see id.* at 98:22-102:4, and a grievance directly to Central Office Review Committee ("CORC"), *id.* at 78:4-7.

with prejudice: (1) Plaintiff's official capacity claims against the defendants; and (2) Plaintiff's constitutional claims related to the violations of facility rules and regulations.  Dkt. No. 6.  The Court dismissed the following claims, without prejudice: (1) First Amendment claims; (2) Fourteenth Amendment due process claims related to disciplinary hearings and due process claims against Miller and Annucci; (3) constitutional claims related to false misbehavior reports; (4) conspiracy claims; and (5) state law claims.  *Id*.  The Court also dismissed Miller and Annucci from the action.  *Id.* at 20.  The Court held that Plaintiff's Eighth Amendment conditions of confinement claims against Owens and Eberley; and (2) Fourteenth Amendment due process claims against Owens and Eberley survived *sua sponte* review and required a response.  *Id*.

Plaintiff subsequently requested to file an amended complaint as a matter of right.  Dkt. No. 18.  After retaining counsel, Plaintiff withdrew his request and the parties stipulated to Plaintiff filing a SAC.  Dkt. Nos. 26, 27.  On May 10, 2021, Plaintiff filed a SAC, naming Owens, Eberley, Miller, Annucci, and John Does as defendants alleging four claims: denial of First Amendment rights; Eighth Amendment deliberate indifference; denial of Fourteenth Amendment due process; and intentional infliction of emotional distress.  *See* Dkt. No. 29.  Owens, Eberley, Miller and Annucci filed motions for summary judgment in lieu of an Answer for exhaustion purposes only and alternatively partial motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12 (b)(6)").  *See* Dkt. Nos. 31, 44.  The parties filed responsive briefings.  *See* Dkt. Nos. 45, 46.  On March 30, 2022, the Court (i) granted Miller's and Annucci's motion to dismiss pursuant to Rule 12(b)(6); (ii) granted Owens' and Eberley's motion to dismiss as to Plaintiff's due process and intentional infliction of emotional distress claims; (iii) denied Miller's and Annucci's motion for summary judgment; (iv) denied Owens' and Eberley's motion for summary judgment; and (iv) referred the matter to Magistrate Judge Christian F. Hummel for limited

discovery on the question of administrative exhaustion and an evidentiary hearing.  Dkt. No. 47.

Therefore, the remaining claims in this action are Plaintiff's First Amendment free exercise claims

and Eighth Amendment deliberate indifference claims against Owens and Eberley.  *See id.*

On April 13, 2022, the Court set a 60-day extension of the discovery deadline for the

limited purpose of conducting discovery into the issue of exhaustion.  Text Minute Entry dated

April 13, 2022.  Plaintiff's deposition on the limited issue of exhaustion was taken on May 5, 2022.

*See* Dkt. No. 56-3 at 5-153.  The parties attended an in-person conference before Magistrate Judge

Hummel on June 16, 2022.  Text Minute Entry dated June 16, 2022.  Following the conference,

the Court extended the discovery deadline to September 15, 2022.  Dkt. No. 53.  Plaintiff's second

deposition was taken on September 2, 2022.  *See* Dkt. No. 56-3 at 154-226.  After a series of

extensions, a Text Order extended the Dispositive Motion deadline to December 1, 2022.  *See* Dkt.

No. 55.

On November 28, 2022, Defendants filed the Motion, Dkt. No. 56, and on February 21,

2023, Plaintiff filed a response, Dkt. No. 61[9], and Defendants replied on February 27, 2023, Dkt.

No. 63.   Defendants move for summary judgment arguing that: (1) Defendants did not violate

Plaintiff's First Amendment free exercise of religion rights; (2) Plaintiff's claims against

Defendants should be dismissed for lack of personal involvement; (3) Plaintiff cannot establish an

Eighth Amendment claim because he was not deprived food or drinking water; (4) Plaintiff failed

to exhaust his administrative remedies; and that (5) Defendants are entitled to qualified immunity.

*See* Dkt. No. 56.

---

[9] Plaintiff's response to Defendants' motion for summary judgment was due on December 19, 2022.  *See* Dkt. No. 56.  On January 23, 2023, the Court *sua sponte* granted Plaintiff until February 10, 2023, to file a response.  Dkt. No. 58.  On February 17, 2023, Plaintiff filed a motion requesting an extension of time to answer the motion for summary judgment.  Dkt. No. 59.  Plaintiff filed his response on February 21, 2023—two months after the due date.  Dkt. No. 61.

### III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted).  To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002).  A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. V. Shane*, 112 F.3d 54, 57 (2d Cir. 1997).  The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative

or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.   DISCUSSION

### A.  Exhaustion of Administrative Remedies

Defendants move for summary judgment on several grounds, including that Plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 56.  Because the exhaustion of administrative remedies is mandatory before an inmate can bring a claim in federal court, *see Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011), the Court will first address this threshold issue.

Under the Prison Litigation Reform Act ("PLRA"), prisoners may not bring any action "with respect to prison conditions under . . . Federal law, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   "To exhaust administrative remedies, an inmate must avail himself of all steps that the [prison-grievance system] holds out, and [do] so properly (so that the [prison-grievance system] addresses the issues on the merits)." *Moreau v. Ellsworth*, No. 21-2997, 2023 WL 3477153, at *2 (2d Cir. May 16, 2023) (summary order) (internal quotations marks and citation omitted).

"In New York, there is a three-tiered process for adjudicating inmate grievances." *Id.* "First, an inmate must file a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the incident." *Id.* (citing N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5(a)(1)).  "If the IGRC renders an adverse decision, the inmate may appeal to the superintendent of the facility, who then has twenty days to respond." *Id.* (citing NYCRR

tit. 7, § 701.5(c)(3)(i).  "The prisoner may appeal an adverse decision of the superintendent by submitting a Form 2133 to the Central Office Review Committee ("CORC") within seven days of the superintendent's decision; the CORC, in turn, must render a decision within thirty days of receiving the appeal."  *Id.* (citing NYCRR tit. 7, § 701.5(d)(1)(i), (3)(ii)).  "Matters not decided within the statutory time limits "may be appealed to the next step."  *Id.* (citing NYCRR tit. 7, § 701.6(g)(2)).

Typically, inmates file grievances with the grievance clerk.  *See* NYCRR tit. 7, § 701.5(a)(1).  However, if an inmate is housed in the SHU (*i.e.*, segregated from the general prison population), he may give the grievance complaint to a corrections officer to file for him.  *See id.* § 701.7.

If an inmate is transferred to another facility while a grievance is pending, a response to the grievance shall be mailed to the inmate at the new facility.  *Id.* § 701.6(h)(1).  "If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt."  *Id.* § 701.6(h)(2).  If an inmate wishes to file a new grievance about an incident that occurred prior to a transfer, he must file the grievance in the facility where he is currently housed, "even if it pertains to another facility."  *Id.* § 701.5(a)(1).

An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable.  *See Ross v. Blake*, 578 U.S. 632 (2016).  The Supreme Court in *Ross* determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Id.* at 642 (internal quotation marks and citation omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant discharges his or her initial burden by "demonstrating that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. *White v. Velie*, 709 Fed. App'x. 35, 38 (2d Cir. 2017) (summary order). The burden then shifts to the plaintiff, who must show that "other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citation omitted).

Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to the filing of this action because he did not follow the three-tiered process for adjudicating inmate grievances. *See* Dkt. No. 31-1 at 7-12; Dkt. No. 56-1 at 21-24. In support of their argument, Defendants submit declarations from Inmate Grievance Program Supervisors ("IGPS"), which describe DOCCS's administrative exhaustion process. Dkt. Nos. 31-4, 31-5, 31-6. Each IGPS stated that Plaintiff never filed a grievance relating to the purported violations alleged in this action. Dkt. No. 31-4 at ¶¶ 20-21; Dkt. No. 31-5 at ¶¶ 17-20; Dkt. No. 31-6 at ¶¶ 17-20. Defendants also

submitted a document showing Plaintiff's grievance-filing history.  Dkt. No. 31-7 at 6-7.  With these submissions, Defendants have met their initial burden.  *Hubbs*, 788 F.3d at 59; *see also Bennett v. Onua*, No. 09 Civ. 7227 (SAS), 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (finding that the defendants "adequately supported the affirmative defense of failure to exhaust" where "a search of the grievance log records . . . did not reveal any record of a grievance" filed by the plaintiff).

Because Defendants have met their initial burden, the burden shifts to Plaintiff to show that the administrative remedies were unavailable to him.  *See Hubbs*, 788 F.3d at 59.  Plaintiff concedes that he did not follow the established three-tier process but alleges that he was precluded from doing so because unnamed corrections officers at Great Meadow discarded or destroyed his grievances.  *See generally* Dkt. Nos. 45, 61.  Plaintiff principally argues that summary judgment on the exhaustion of administrative remedies should be denied because there are questions of material fact.[10]  Dkt. No. 61 at 15.   In support of his argument, Plaintiff cites to his deposition testimony and the purported handwritten duplicates of the grievances that he allegedly authored. *Id.*  Plaintiff contends that while he was housed in the SHU, he authored and placed grievances "in an envelope addressed to the Inmate Grievance Unit and placed [them] on his cell gate, per facility policy, for the correction officer to take and place in the mailbox," Dkt. No. 45-2 at ¶ 4, on September 9, 2019, and on September 20, 2019, but did not receive a response to either of these grievances.[11]  Dkt. No. 45-3 at ¶¶ 8, 9; *see* Dkt. No. 61 at 15.  Plaintiff also testified that he

---

[10] Although not clear from Plaintiff's Opposition, he appears to argue that the administrative remedies were unavailable to him.  *See* Dkt. No. 45-5 at 4-5 (arguing that the Court should engage in a three-party inquiry as set forth in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), and that there were no administrative remedies available to plaintiff).

[11] While Plaintiff has provided the Court with what appears to be two handwritten grievances, both grievances are dated September 20, 2019.  *See* Dkt. No. 45-3 at 5-6.  Moreover, one of the handwritten grievances appears to be a draft.  *See id.* at 5; Dkt. No. 56-3 at 93:23-25 ("This is the

submitted a letter to a Superintendent, *see* Dkt. No. 56-3 at 73:2-5, letters to two different Commissioners, *see id.* at 98:22-102:4, and a grievance directly to CORC, *id.* at 78:4-7.

Based on the record before the Court, the Court finds that Plaintiff's administrative remedies were unavailable under *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016). In *Williams*, the Second Circuit considered whether administrative remedies had been "actually available" to an inmate housed in the SHU, in the context of grievances allegedly submitted to facility staff, but purportedly never filed. 829 F.3d at 119-20. The plaintiff alleged that while housed in the SHU, he drafted a grievance that he delivered to a corrections officer to forward to the grievance office on his behalf. *Id.* at 120-21. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance and alleged that it was never filed by the corrections officer to whom he had given it. *Id.* It was undisputed that the plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The *Williams* court rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The *Williams* court also found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* "Following the Second Circuit's decision in *Williams*, several courts . . . have concluded that where a grievance is both *unfiled and unanswered*, the process to appeal . . . is prohibitively opaque, such that no inmate could actually make use of it." *Maldonado v. Mandalaywala*, No. 9:17-CV-1303

---

rough draft. They're both the same. I did them both at the same time, I submitted differently, though.").

(BKS/TWD), 2020 WL 1159426, at *15 (N.D.N.Y. Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020) (emphasis in the original, internal quotation marks omitted and citations omitted); *Hurst v. Mollnow*, No. 16-CV-1062 (DNH/TWD), 2018 WL 4178226, at *10 (N.D.N.Y. July 20, 2018) ("Therefore, [a]s long as [the plaintiff's] grievances were not actually filed, then [the plaintiff's] current situation falls squarely within the Second Circuit's decision in *Williams*[.]") (alterations in original, internal quotation marks and citation omitted), *report and recommendation adopted*, 2018 WL 4153926 (N.D.N.Y. Aug. 30, 2018).

Although neither party discussed *Williams* in its papers, *Williams* controls here. As in *Williams*, Plaintiff alleges that while he was housed in the SHU, he drafted two grievances that he placed on his cell door for a corrections officer to pick up and deliver to the grievance office on his behalf. Dkt. No. 45-3 at ¶¶ 8, 9; *see* Dkt. No. 61 at 15. Moreover, as in *Williams*, Plaintiff was transferred to a different facility shortly after delivering his grievances to the corrections officer while in the SHU. *See* Dkt. No. 56-3 at 73:6-17. Plaintiff also alleges that he never received a response to his grievances and alleges that his grievances were never filed and/or were destroyed by the corrections officer(s) that picked up the grievances from his cell door. *See id.* at 76:13-19; 79:21-81:23. Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court finds that the factual allegations raise a genuine issue of material fact as to exhaustion. *See, e.g., Fann v. Graham*, No. 9:15-CV-1339 (DNH/CFH), 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) (finding issue of fact as to the availability of administrative remedies where the record suggested the plaintiff submitted grievances, which were unfiled and unanswered), *report and recommendation adopted*, 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018). Therefore, the Court

denies Defendants' motion for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies.[12]

### B.  Plaintiff's Claims Against Defendants

Plaintiff seeks damages for alleged violations of his constitutional rights under Section 1983.  "To state a valid claim under [Section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citation omitted).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation. *See Victory v. Pataki,* 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016).  Moreover, the theory of *respondeat superior* is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[T]here is no special rule for supervisory liability [under § 1983]. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

Defendants argue that Plaintiff's Section 1983 claims against Defendants fail as a matter of law because he, among other things, cannot establish that Owens and Eberley were personally involved in the alleged constitutional violations.  *See* Dkt. 56-1 at 8-14.  Plaintiff did not respond

---

[12] For the reasons discussed *infra*, the Court finds that an exhaustion hearing in not warranted.

to Defendants' arguments in his Opposition.[13]  *See generally* Dkt. No. 61.

### i. Defendant Owens

The summary judgment record is devoid of any evidence establishing Defendant Owens' personal involvement in the alleged constitutional violations.  Defendants submitted documentary evidence, such as the "Watch Commander Log Book" and the "Log Book," all of which demonstrate that Owens did not participate in observing—or authorizing—Plaintiff's contraband watch from August 25, 2019 to September 6, 2019.  *See* Dkt. No. 56-4 at 10-47.  In addition, Plaintiff testified that Owens did not observe him during the contraband watch, which is when Plaintiff was allegedly denied water to "bathe" before and after meals, and was deprived of food and drinking water.  Dkt. No. 56-3 at 182:15-17 ("Q:  Okay, do you remember ever being watched by Owens, Lt. Owens? A:  No.  No.").  Moreover, Plaintiff testified that Owens violated his constitutional right when "he authorized me and put me in the defecation room without no proper authority.  He's the one who told them to put me in there."  *Id.* at 202:23-203:2.[14]  But documentary evidence demonstrates that Captain Fraser authorized Plaintiff's contraband watch.  *See* Dkt. No. 56-4 at 11.  Moreover, Plaintiff has not proffered any evidence demonstrating Owens' involvement in Plaintiff's remaining claims—that is, the First and Eighth Amendment claims.   At summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.   Plaintiff has not met his burden and has failed to raise a genuine dispute of fact as to Defendant Owens' personal

---

[13] Plaintiff alleges that he is unable to respond to Defendants' motion for summary judgment because he did not conduct discovery.  Dkt No. 61 at 14.  Plaintiff's contention strains credulity. Plaintiff testified in two depositions and was in possession of documentary evidence produced by Defendants evidencing Defendants' involvement, or lack thereof, in Plaintiff's contraband watch. *See* Dkt. Nos. 56-3, 56-4.

[14] Plaintiff's due process claim against Owens and Eberley relating to the deprivation order was dismissed by this Court on March 30, 2022.  *See* Dkt. No. 47.

involvement in the alleged constitutional violations.  *See e.g., Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) (where corrections officer had only filed a report and was not personally involved in a hearing which plaintiff alleged had violated his due process rights, summary judgment was appropriate because plaintiff had failed to raise an issue of material fact regarding the personal involvement of the corrections officer).

### ii.  Defendant Eberley

Similarly, the summary judgment record is devoid of any facts establishing Defendant Eberley's personal involvement in Plaintiff's Eighth Amendment claim.   Based on the documentary evidence, the record shows that Eberley was not assigned to—nor involved in— Plaintiff's contraband watch from August 25, 2019 to September 4, 2019.  *See* Dkt. No. 56-2 at ¶ 65 (citing Dkt. No. 56-5); Dkt. No. 56-4 at 10-47.  Because Plaintiff alleges that he was deprived of drinking water and food from August 25, 2019 to August 30, 2019, Eberley could not have been involved in the alleged violation of the Eighth Amendment.  Moreover, Plaintiff failed to offer any evidence demonstrating otherwise, and even testified that he did not recall being observed by Defendant Eberley during his contraband watch, nor could he identify what, if anything, Eberley did to violate his constitutional rights.  *See* Dkt. No. 56-3 at 182:18-183:2 ("Q. Do you remember -- remember being watched by Eberlly (sic)?  A. I -- I don't remember who was watching me. Because like I said, I get three different people, or two different people a day, and I was up there for fifteen days.  So, I wasn't really -- like I said, they don't talk to me.  They just sit here and read their books and listen -- they look at me."); *Id.* at 203:14-19 ("Q. Okay.  What about Mr. Eberlly (sic)?  What did he do specifically?  A. What he did was I don't know.  Like I said, I don't -- I can't exactly tell you what…."); *Id.* at 203:20-204:4 ("Q. Okay.  So, you don't remember what Mr. Eberly's actions that violated your constitutional [rights]?  A. Exactly what he did, no. I can't

sit here and say right, Mr. Eberlly (sic) did this or Mr. Eberlly (sic) did that, or Mr. Owens did this. Because like I said, I don't know what . . . role they played in it exactly. But did they play a role in it? Yes."). Therefore, Plaintiff has not met his burden and has failed to raise a genuine dispute of fact as to Defendant Eberley's personal involvement in Plaintiff's Eighth Amendment deliberate indifference claim.

That leaves Plaintiff's First Amendment claim—that he was deprived of water to bathe himself before and after meals from August 30, 2019 to September 6, 2019, which prevented him from practicing his Rastafarian religion. Dkt. No. 29 at ¶¶ 43-48; Dkt. No. 56-2 at ¶ 19. The summary judgment record shows that Defendant Eberley observed Plaintiff during the contraband watch only on one day during the period in question—on September 5, 2019. Dkt. No. 56-2 at ¶ 46; Dkt. No. 56-4 at 47. Even though Defendant Eberley was involved in Plaintiff's contraband watch, Plaintiff has only put forth "conclusory allegations, conjecture and speculation . . . [which] are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Indeed, Plaintiff has failed to proffer any evidence demonstrating that on September 5, 2019, he requested—and was denied—water from Eberley.[15] Moreover, Plaintiff testified that he "can't say" what, if anything, Eberley did to violate his constitutional rights. *See* Dkt. No. 56-3 at 203:20-204:4. Put simply, Plaintiff has failed to proffer any evidence from which a reasonable jury could find that Eberley was personally involved in the alleged violation of Plaintiff's First Amendment rights.[16]

---

[15] The Court notes that the notations in the "Log Book" show that Plaintiff requested and was provided with water at 3:50 pm on September 5, 2019. *See* Dkt No. 56-4 at 47. Plaintiff has not put forth any evidence disputing this showing.

[16] Even assuming *arguendo* that Plaintiff had met his burden (he did not), Plaintiff's First Amendment claim against Defendant Eberley fails as a matter of law because he cannot satisfy the third prong of the three-part test to establish a First Amendment free exercise claim. To state a First Amendment free exercise claim, a plaintiff must allege that (1) the practice asserted is

Accordingly, the Court grants Defendants' motion for summary judgment for lack of personal involvement.[17]

### C. Plaintiff's Claims Against John Doe Defendants

In the SAC, Plaintiff asserts claims against John Doe defendants. *See* Dkt. No. 29. But there is nothing in the record showing that Plaintiff has identified or served the John Does in this action, which was commenced nearly three years ago.[18]  *See generally* Docket. The Court finds that the claims against the John Does are time-barred and any attempt by Plaintiff to amend the SAC to substitute the John Doe defendants would be futile. Therefore, the Court will "forestall

---

religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials does not further some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted). Defendants argue that it is "clear that legitimate penological objectives existed – DOCCS Directive 4910 (J)(5) outlines procedures that the water supply to the cell/room shall be turned off while the incarcerated individual is being observed in contraband watch" and that "[t]he implementation and enforcement of these standardized procedures aid in the control of contraband being further introduced into the prison population." Dkt. No. 56-1 at 8. The burden shifts to Plaintiff to show that the penological reasons articulated by Defendants are irrational. *Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003). Plaintiff has failed to do so. Plaintiff contends that he was unable to respond to Defendants' arguments on this issue because he did not conduct discovery. *See* Dkt. No. 61 at 14. It is not clear to the Court what discovery Plaintiff could have sought from Defendants to demonstrate that the penological reason articulated by Defendants is irrational. Thus, the Court finds that summary judgment is also warranted on this ground.

[17] Because the Court is granting Defendants' motion for summary judgment on other grounds, the Court need not address Defendants' argument that they are entitled to qualified immunity.

[18] The Court notes that Plaintiff's failure to identify and serve the John Does when the SAC was filed approximately two years ago is in and of itself grounds for this Court to *sua sponte* dismiss the Joe Does. *See Williams v. Johnson*, No. 17 Civ. 2351 (ER), 2019 WL 1437820, at *8 (S.D.N.Y. Mar. 31, 2019) (dismissing claims *sua sponte* against unidentified John Doe defendants when suit was filed nearly two years ago and plaintiff "ha[d] not amended his complaint to identify the John Doe defendants"). Courts have routinely held, "[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

further motion practice and *sua sponte* dismiss the John Doe claims with prejudice" because the claims do not relate back to the SAC. *Aniades v. New York State Div. of Parole*, No. 21 Civ. 5975 (CM), 2023 WL 4421877, at *13 (S.D.N.Y. July 10, 2023).

Each of Plaintiff's claims in the SAC are subject to a three-year statute of limitations. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citing NYCPLR § 214(5) (because Section 1983 does not contain a specific statute of limitations, courts apply the statute of limitations for personal injury actions under state law, which in New York is three years). For each of Plaintiff's claims, the limitations period began to run at the time the alleged violations occurred—August 25, 2019 to September 6, 2019. *See generally* Dkt. No. 29. Therefore, Plaintiff's claims became time-barred on or around September 6, 2022 (at the latest). *See Pearl*, 296 F.3d at 80 ("Federal law determines when a section 1983 cause of action accrues, and we have ruled that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action.") (internal quotation marks and citations omitted). "Generally, John Doe pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (internal quotation marks and citations omitted). "John Doe substitutions . . . may only be accomplished when all of the specifications of Fed.R.Civ.P. 15(c) are met." *Id.* (internal quotation marks and citations omitted). Plaintiff cannot meet these specifications.

### i.  Rule 15(c)(1)(C)

Pursuant to Federal Rule of Civil Procedure 15(c)(1)(C), an amended complaint which adds a new party, or replaces a "Doe" defendant with a named defendant, will be deemed to relate back to the date of the original pleading, provided that:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be

> prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and (4) the second and third criteria are fulfilled within [90] days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

*Hogan,* 738 F.3d at 517 (citing Fed. R. Civ. P. 15(c)(1)(C)) (further citation omitted); *see* Fed. R. Civ. P. 15(c)(1)(B), (C) (setting forth requirements for permitting amended complaint against newly named defendants to relate back to an original complaint); *see also* Fed. R. Civ. P. 4(m) (noting 90-day service period for services of summons and complaint under Rule 4(m)).  The Second Circuit has "interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Id.* (citations omitted).  Moreover, "although Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties . . . [,] the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as mistake." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996).  Thus, "relation back is precluded under Rule 15(c)(1)(C) where a plaintiff does not know the names of the officers against whom he seeks to assert a § 1983 claim." *Chow v. Shorefront Operating LLC*, No. 19-CV-3541 (FB)(SJB), 2021 WL 225933, at *5 (E.D.N.Y. Jan. 20, 2021) (internal quotation marks and citations omitted).

Here, Plaintiff cannot satisfy the third element—that the unnamed "party should have known that, but for a mistake of identity, the original action would have been brought against it." *Hogan*, 738 F.3d at 517 (citation omitted).  Plaintiff's failure to name the corrections officers who allegedly deprived him of food and water was from a lack of knowledge of their names, rather than a "mistake of their identity." *See id*.  Accordingly, Plaintiff's claims against the Joe Does do not relate back under Rule 15(c)(1)(C).

### ii. Rule 15(c)(1)(A)

Nor do Plaintiff's claims relate back under Rule 15(c)(1)(A), which permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." "Rule 15(c)(1)(A) instructs courts . . . to look to the entire body of limitations law that provides the applicable statute of limitations. As discussed *supra*, § 1983 derives its statute of limitations from state law." *Hogan*, 738 F.3d at 518. "[T]he New York Civil Practice Law and Rules ("CPLR") creates a special procedure for claims alleged against John Doe defendants." *Id.* Section 1024 of the CPLR reads:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

"New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc*." *Id.* at 518-19 (collecting cases). "To take advantage of § 1024, a party must meet two requirements." *Id.* at 519 (citations omitted). "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Id.* (internal quotation marks and citations omitted). "Second, the party must describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Id.* (internal quotations marks and citations omitted).

Plaintiff cannot avail himself of § 1024 because he failed to exercise due diligence to timely ascertain the names of the John Does. *See, e.g., Vasconcellos v. City of New York*, No. 12 Civ. 8445 (CM), 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014) ("Vasconcellos did nothing to exercise due diligence prior to the running of the statute—or for that matter, after it ran."); *JCG v. Ercole*, No. 11 Civ. 6844 (CM)(JLC), 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014), *report*

*and recommendation adopted*, 2014 WL 2769120 ("Plaintiff appears to have expended no efforts at all to identify the Individual Defendants in the three years that followed, waiting until the statute of limitations had nearly run to file his complaint.").   "The onus of identifying an officer defendant's name, or at least making a good faith effort, lies on the plaintiff."   *Barrett v. City of Newburgh,* 720 Fed. App'x 29, 33 (2d Cir. 2017) (citations omitted) (summary order).   "Due diligence is not exercised by 'last minute' or token discovery requests."   *Id.* (citations omitted). "A plaintiff exercising due diligence will take concrete and timely steps to ascertain an officer defendants' identity, for example by submitting multiple discovery demands, requests under state or federal Freedom of Information laws, or requests to the Attorney General's office."   *Id.* (citing *Mabry v. New York City Dep't of Corr.*, No. 05 Civ. 8133(JSR)(JCF), 2008 WL 619003, at *6 (S.D.N.Y. Mar. 7, 2008) (allowing relation back where plaintiff "aggressively sought the identities of the defendants").   "Courts typically find a lack of due diligence where the plaintiff failed to take any action beyond filing his original complaint prior to the expiration of the statute of limitations." *Perrien v. City of New York*, No. 21-CV-4443 (MKB), 2022 WL 4134367, at *4 (E.D.N.Y. Sept. 12, 2022) (internal quotation marks and citations omitted).   Here, there is nothing in the record demonstrating that Plaintiff exercised any diligence—let alone due diligence—to ascertain the identities of the John Does.   In fact, in connection with the Motion, Defendants provided the contraband watch "Log Book," which appears to include the names of the corrections officers that were assigned to Plaintiff's contraband watch.   *See* Dkt. No. 56-4 at 10-47.   Plaintiff has been in possession of these materials since November 28, 2022 (at the latest) and has taken no action to amend the SAC to substitute the John Doe defendants.[19]   Accordingly, the Court *sua sponte*

---

[19] In connection with the OTSC, Plaintiff was given an opportunity to explain to the Court what steps he has taken to ascertain the identity of the John Does since the filing of the SAC on May

dismisses the claims against the John Does because such claims are time-barred.  *See, e.g., Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009) (*sua sponte* dismissing John Doe defendants in a Section 1983 action because such claims were barred by the statute of limitations).

## V.     CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Defendants' motion for summary judgment, Dkt. No. 56, is **GRANTED**; and the Court further

**ORDERS** that the claims against the John Doe #1-5 defendants are **DISMISSED with prejudice** as time-barred; and the Court further

**ORDERS** that the Clerk shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


Dated: August 21, 2023
       Albany, New York

Anne M. Nardacci
U.S. District Judge

---

10, 2021.  Dkt. No. 64.  However, Plaintiff did not respond to the Court's order.  *See generally* Docket.